IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY C. COWART, <br> TDCJ NO. 1758889, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER D. LAVERGNE, et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-13-0396 |

### MEMORANDUM OPINION AND ORDER

Jeffrey C. Cowart, a TDCJ inmate appearing pro se, filed a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 ("Original Complaint") claiming that Patton Village Police Officer DeAngelo Lavergne was deliberately indifferent to Cowart's serious medical needs when Officer Lavergne arrested him for driving while intoxicated (DWI).

Cowart alleges that he was involved in an automobile accident on July 28, 2011, and that he suffered major trauma to his face including a broken nose. He further alleges that he was covered with gasoline when Officer Lavergne arrested him and that Lavergne ignored his pleas for medical attention. The parties tried the case to the court on November 24, 2014. After carefully considering the evidence and the law, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1).

## I. Findings of Fact

1. The accident occurred at approximately 3:00 a.m. on July 28, 2011, when Cowart's car hit a sign post while Cowart was trying to stop in order to avoid colliding with a large truck. After hitting the sign post, Cowart's car overturned and slid under the truck's trailer. The accident caused gasoline to spill out of the car's fuel tank soaking Cowart and his clothes.

2. After the accident Cowart got out of his car. Although there were two dogs in the car with Cowart at the time of the accident, he could find only one of them after he got out of his car.

3. Officer Lavergne of the City of Patton Village arrived at the accident scene at 3:16 a.m.

4. Cowart was irate and complained to Lavergne that one of his dogs was missing. Cowart then crawled back into his overturned car to look for the dog.

5. Officer Lavergne and a fireman who had arrived at the scene instructed Cowart to get out of his car but Cowart refused.

6. Cowart finally got out of his car. Lavergne then noticed that Cowart was unsteady, his speech was slurred, and his eyes were bloodshot. Lavergne arrested Cowart and placed him in the backseat of his patrol car.

7. Cowart testified that he told Officer Lavergne that he needed to take off his clothes because they were soaked with

gasoline and his skin was burning, but that Lavergne left Cowart handcuffed in his patrol car while he completed his investigation.

8. Officer Lavergne testified that the EMS personnel asked Cowart if he needed medical treatment, but Cowart answered that all he wanted was his dog. Cowart told Lavergne that he did not want medical treatment; that all he wanted was his dog.

9. Sergeant Beau Price, Officer Lavergne's supervisor at the time of the accident, testified that he arrived at the accident scene at 3:22 a.m. and noticed a large fire truck parked on the roadway blocking traffic. Police from the City of Roman Forest were also present along with EMS personnel.

10. Sgt. Price saw Cowart standing and holding a dog while talking to Officer Lavergne. Sgt. Price testified that Cowart was belligerent and cursing Officer Lavergne.

11. Sgt. Price testified that EMS personnel tried to talk to Cowart about medical treatment but that Cowart refused any offers of help. The EMS personnel gave up their efforts and told Sgt. Price that Cowart did not appear to be seriously injured.

12. Sgt. Price testified that Cowart continued to argue with Officer Lavergne and that Officer Lavergne decided to arrest him at approximately 3:40 a.m. Cowart was seated in the back of Lavergne's patrol car with the window rolled down. Sgt. Price talked to Cowart while Officer Lavergne investigated the accident.

13. Sgt. Price also testified that Cowart looked reasonably well and did not appear to have any life threatening injuries. Sgt. Price testified that Officer Lavergne left at 4:23 a.m. to take Cowart to the hospital.

14. Officer Lavergne took Cowart to Kingwood Hospital Emergency Room for treatment and for a blood draw to test for intoxication. While at the hospital, Cowart took a shower and changed into a paper hospital gown.

15. The blood sample taken from Cowart contained 0.19 grams of alcohol per 100 milliliters of blood, well above the legal limit for intoxication.

16. Kingwood Hospital treated Cowart for a fractured facial bone and released him the same day to the custody of the Montgomery County Jail.

17. The court finds the testimony of Officer Lavergne and Sgt. Price to be much more credible than that of Cowart.

## II. Conclusions of Law

1. Because he was a pretrial detainee at the time of the accident, Cowart's right to medical care is based on the Fourteenth Amendment's Due Process Clause. Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388, 393 (5th Cir. 2000); Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir. 1996). See also Nerren v. Livingston Police Dept., 86 F.3d 469, 473 (5th Cir. 1996) ("After the initial incidents of a seizure have concluded and an individual

-4-

is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment.").

2. Like the Eighth Amendment, the Fourteenth Amendment places a duty on law enforcement officials to protect detainees from harm while they are in custody. Silva v. Moses, 542 F. App'x 308, 310 (5th Cir. 2013), citing Hare, 74 F.3d at 639. Cowart claims that Officer Lavergne denied him medical care at the scene of an accident. Because this is an episodic act, Cowart must prove that Lavergne acted with deliberate indifference to his serious health needs. Id., citing Hare, 74 F.3d at 636; Brown v. Strain, 663 F.3d 245, 249 (5th Cir. 2011). See also Duvall v. Dallas County, Tex., 631 F.3d 203, 207 (5th Cir. 2011); Bowers v. Livingston County, 426 F. App'x 371, 372 (6th Cir. 2011) (deliberate indifference standard for detainees); McRaven v. Sanders, 577 F.3d 974, 979-980 (8th Cir. 2009) (pretrial detainees are entitled to the same deliberate indifference standard as convicted prisoners).

3. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001); see also Brewster v. Dretke, 587 F.3d 764 (5th Cir. 2009). In the context of medical needs, the deliberate indifference standard is met when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Silva, 542 F. App'x at 310, citing Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994).

4. It is not enough to show that Officer Lavergne was negligent in causing Cowart to suffer injuries due to lack of medical care; Cowart must prove that Lavergne actually ignored the risks to Cowart's health and safety after he was made aware of them. See Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999). There must be a showing of "wanton" or reckless conduct by the defendant. McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997), quoting Farmer, 114 S. Ct. at 1980 (criminal law standard of "subjective recklessness" is used to determine deliberate indifference); Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

5. The court can infer deliberate indifference from the obviousness of the circumstances or injuries. Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services, 380 F.3d 872, 881 (5th Cir. 2004); see also Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). However, the issue is not whether Lavergne "knew or should have known" of the risk to Cowart's health but whether he had actual knowledge of the risk to Cowart and responded with deliberate indifference. See Hare, 74 F.3d at 650. To determine deliberate indifference the court must focus on whether Cowart's medical needs were apparently serious and the nature of Lavergne's response to those needs. Brown, 663 F.3d at 249.

6. The court finds that although Cowart was injured and intoxicated, he was reasonably lucid and physically sound when Officer Lavergne found him at the scene of the accident. Cowart did not exhibit any wounds that were life threatening or that required urgent care. Cowart did not present a condition so serious that an untrained layman would have recognized the need for medical help. See Gobert, 463 F.3d at 345 n.12.

7. EMS personnel at the accident scene observed Cowart and determined that he did not need emergency care. As a law enforcement officer, Lavergne was reasonable in deferring to the diagnosis of the EMS personnel. See Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001). Due to Cowart's apparent condition, any delay by Officer Lavergne in obtaining medical attention for him would at most have been the result of inadvertence or error, not deliberate indifference in violation of Cowart's constitutional rights. See Sibley v. Lemaire, 184 F.3d 481, 489 (5th Cir. 1999); Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992).

8. After completing his investigation, Officer Lavergne transported Cowart to a nearby hospital where he was seen by health care professionals. There was no unreasonable delay on the part of Officer Lavergne in providing medical care to Cowart that would support an actionable claim by Cowart. See Bias v. Woods, 288 F. App'x 158, 162-163 (5th Cir. 2008).

9. The credible evidence persuades the court that Officer Lavergne was not deliberately indifferent to Cowart's need for medical care. The court concludes that Cowart has not established that Officer Lavergne deprived him of or unreasonably delayed his right to medical care under the Fourteenth Amendment.

Accordingly, this action will be dismissed, and plaintiff will take nothing.

**SIGNED** at Houston, Texas, on this 2nd day of December, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE